# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3981-24

T.W.,

    Plaintiff-Respondent,

v.

J.C.,

    Defendant-Appellant.

_____

Submitted July 14, 2026 – Decided July 30, 2026

Before Judges Gummer and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FV-06-1556-25.

Obermayer Rebmann Maxwell & Hippel LLP, attorneys for appellant (Shari B. Veisblatt, on the brief).

Respondent has not filed a brief.

PER CURIAM

    Defendant J.C. appeals from a final restraining order (FRO), which was entered after a bench trial and pursuant to the Prevention of Domestic Violence

Act (PDVA), N.J.S.A. 2C:25-17 to -35.[1]  Defendant argues the trial court violated his due-process rights by considering testimony that referenced acts of domestic violence not pleaded in the complaint, erred in considering an allegation raised in a previously-dismissed complaint, and rendered findings that did not support issuing an FRO to protect plaintiff T.W. from further harm.  We disagree and affirm.

I.

The scope of our review is limited in an appeal involving an FRO issued after a bench trial.  C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020).  "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'"  Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024) (same).  "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'"  MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)); see also T.M.S. v. W.C.P.,

---

[1]  We use initials in this domestic-violence action pursuant to Rule 1:38-3(d)(10).

450 N.J. Super. 499, 502 (App. Div. 2017). "[T]he trial [court] 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

"The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12; Gnall, 222 N.J. at 428. We defer to a trial court's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); see also C.C., 463 N.J. Super. at 428. We review de novo a trial judge's legal conclusions. C.C., 463 N.J. Super. at 429.

The entry of an FRO under the PDVA requires the trial court to make certain findings pursuant to the two-pronged analysis set forth in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citation reformatted) (citing N.J.S.A. 2C:25-29(a)).

A-3981-24

Terroristic threats, N.J.S.A. 2C:12-3, and harassment, N.J.S.A. 2C:33-4, are among the predicate acts included in N.J.S.A. 2C:25-19(a). See N.J.S.A. 2C:25-19(a)(3), (13). A person makes a terroristic threat when he or she "threatens to commit any crime of violence with the purpose to terrorize another" or "threatens to kill another with the purpose to put [the victim] in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out." N.J.S.A. 2C:12-3(a), (b). A person commits harassment when he or she: "[m]akes . . . one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm," N.J.S.A. 2C:33-4(a); "[s]ubjects another to . . . offensive touching, or threatens to do so," N.J.S.A. 2C:33-4(b); or "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person," N.J.S.A. 2C:33-4(c).

As to the second prong of the Silver analysis, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further acts of violence. Silver, 387 N.J. Super. at 127; see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021) (finding "the judge must determine whether a restraining order is necessary to protect the plaintiff from

future danger or threats of violence"). That determination must be made based on a totality-of-the-circumstances analysis. See C.C., 463 N.J. Super. at 436 (explaining "the credible evidence in the record support[ed] the [trial] judge's decision that the FRO was necessary to protect plaintiff from immediate danger or future abuse" where "plaintiff's testimony established the totality of defendant's conduct placed her in fear"); see also N.J.S.A. 2C:25-29(b) (stating "the court shall grant any relief necessary to prevent further abuse").

## II.

On June 29, 2025, plaintiff obtained a temporary restraining order (TRO) against defendant, who was her husband. In her domestic-violence complaint, plaintiff alleged defendant had "verbally threatened to kill her approximately two weeks ago" and, after she left their residence, "on [June 28, 2025] . . . attempted [to] contact [her] on her cell phone at 2:35 [a.m.] and did not stop until 3:45 [a.m.]" In the complaint, plaintiff identified terroristic threats and harassment as the predicate acts at issue. The complaint indicated the parties did not have any prior history of domestic violence and had not been involved in any prior court proceedings.

On July 8, 2025, the court conducted a trial on plaintiff's domestic-violence complaint. The parties were self-represented, and both testified. At

A-3981-24

the beginning of the hearing, defendant informed the court about "a past restraining order from [plaintiff] to [defendant] that . . . was proved at trial . . . [to be] a phony restraining order." Defendant "ask[ed] that that be taken . . . into account."

Plaintiff testified defendant "f[ought] with [her] every single day" and had "threatened . . . he would kill [her]" if she left him. According to plaintiff, defendant told her that if she left their residence and moved in with her parents, he "would lie, put a fake restraining order on [her, and] have [her] dad's hunting guns all taken away." Plaintiff testified defendant had stated on multiple occasions he "would become a widower before he . . . got divorced." Plaintiff understood those statements to mean she "would be dead before [she] could file for divorce." Plaintiff testified defendant had told her multiple times that he could not "live without [her], and that if [she] left him[,] . . . he would kill [her]."

When plaintiff stated defendant also had made that comment to her friend, defendant objected, contending she had not included in the complaint any allegations about statements he had made to her friend. The court ruled that "witnesses and alleged victims of domestic violence are permitted to go outside of the face of the complaint" and informed defendant he could request a continuance or extra time to prepare before cross-examining plaintiff. The court

A-3981-24

recognized defendant had an "ongoing objection" to any testimony that was "not on the face of the complaint."

Plaintiff continued her testimony, stating she had realized after filing her complaint that defendant called her 116 times between 4:40 p.m. on Saturday, June 28, 2025, and 1:00 p.m. on Sunday, June 29, 2025, and also called people with whom she was staying. According to plaintiff, defendant declined her request to return to their residence so she could gather her belongings and leave "peacefully" and told her he would "be evil" and "spiteful" and that "[n]othing w[ould] ever be peaceful with [him]."

Plaintiff testified she was "scared of what [defendant wa]s capable of doing." She described defendant as "bipolar" and stated he did not properly take his prescribed medications. She testified defendant stalked her and "goes to [her] job." Plaintiff testified defendant had placed "a tracker on [her] car the last time [she] left him." Plaintiff stated defendant would go to "any ends . . . to know [her] whereabouts." She explained defendant had learned she was living in a new apartment and she was "scared to death that he[ was] going to come there . . . and harm[ her] in front of [her] child because [she would not] be with him." According to plaintiff, defendant had a permit to carry a gun and had "bragg[ed] to [her] family and his [family] that the [police] did not take his

7

gun because he lied and said he left it in Philly at his job." Plaintiff expressed her belief defendant was "leaving [her] alone because of this TRO" and his concern he could go to jail if he violated it.

The court asked plaintiff to respond to defendant's statement about the existence of a prior restraining order. She testified about two restraining orders defendant had obtained against her. Defendant objected to her testimony and again presented the court with information about the previous restraining order plaintiff had obtained against him. The court advised the parties it would obtain copies of the prior orders. Neither party objected.

After plaintiff completed testifying in her case, the court reminded defendant he could request a brief recess or a continuance to prepare his cross-examination of plaintiff given the concern her testimony exceeded the allegations in the complaint. Defendant advised the court he wanted to proceed. On cross-examination plaintiff acknowledged defendant did not know she was leaving their home on June 28, 2025. She also testified she had gone to Atlantic City that night and had posted pictures on social media.

Defendant called his mother as a witness. She testified she often had been called on the phone to act as a mediator between plaintiff and defendant during their arguments. She also testified plaintiff had threatened to file a false

8

restraining order against defendant and had kicked him, slapped him, and thrown a can at him. His mother denied witnessing any violent act by defendant against plaintiff.

Defendant initially testified he had called plaintiff five or six times on the Saturday night she had left him. He stated he was expecting her to come home and was concerned about her. He then conceded he may have called her as many as eight times and testified calling her fifty times would have been acceptable behavior. Defendant denied threatening to kill plaintiff and putting a tracking device on her car. Defendant asserted plaintiff was attempting to secure an FRO to take his weapons away so he would not be able to work as a security guard. He testified about the court's dismissal of the prior TRO plaintiff had obtained against him.

At the conclusion of the hearing, the court granted plaintiff's request for an FRO. The court found plaintiff credible. In particular, it found credible her testimony about defendant threatening to harm her and the numerous calls he made to her during the night of June 28. It also found defendant's mother credible, noting her testimony demonstrated a "history of arguments" between the parties. The court did not "believe much of" defendant's testimony.

A-3981-24

The court found defendant had vacillated when asked about the number of times he called plaintiff. Rejecting defendant's depiction of himself as a concerned husband calling to "mak[e] sure" plaintiff "was okay," the court found "[t]here had to come a time when [defendant] realized that [plaintiff] was not coming home on that night, but he continued to call." The court noted its disbelief of defendant's testimony about the tracker, while acknowledging the tracker was not referenced in the complaint. The court found the "totality of the circumstances . . . g[a]ve rise to an act of harassment, [under N.J.S.A.] 2C:33-4(a) and/or (c)."

Regarding the need for an FRO, the court found plaintiff was "truthfully scared of [defendant] and what he might do. And [the court's] observations of him are that those fears are justified based on [its] perception of the totality of this case . . . ." The court described "the intensity of [defendant's] emotions and the behavior . . . he ha[d] exhibited in this courtroom, his body language, his facial expressions, and his demeanor." The court concluded defendant's "body language, facial expressions, demeanor, and behavior in the courtroom . . . show[ed] a need for a restraining order in this case."

The court entered the FRO on July 8, 2025. This appeal followed.

10

On appeal, defendant faults the court for considering plaintiff's testimony about defendant telling her friend he would kill plaintiff if she left him, the parties' testimony about the tracking device, and information about the previously-dismissed TRO defendant had brought to the court's attention. He also contends the court's findings under Silver were not sufficiently supported. We disagree. We conclude the court's findings under both prongs of Silver were supported by "adequate, substantial, credible evidence." Cesare, 154 N.J. at 412.

Plaintiff testified defendant had threatened to kill her on multiple occasions and that he had called her repeatedly late on the night she left him. The court found that testimony credible. Defendant conceded he had called her as many as eight times that night. That evidence supported the court's finding defendant had committed the predicate act of harassment under either N.J.S.A. 2C:33-4(a) or (c). See D.V. v. A.H., 394 N.J. Super. 388, 392-93 (Ch. Div. 2007) (finding the defendant harassed the plaintiff by threatening her with death and engaging in annoying conduct by calling her on numerous inconvenient occasions).

The court's finding under the second prong of Silver also was sufficiently supported by credible evidence. The court found credible plaintiff's testimony

11

about defendant's multiple threats to kill her and her fear of what he might do to her. Both parties and defendant's mother had testified about a history of domestic violence between the parties. We discern no basis to reject those findings of the court, which had the opportunity, unlike this court, to "observe[] the witnesses, and hear[] them testify." Gnall, 222 N.J. at 428 (quoting Cesare, 154 N.J. at 412).

The court's consideration of the three items defendant complains about on appeal did not deprive him of due process or a fair trial. Plaintiff did not present the tracking-device incident as a new claim of domestic violence but as an example of defendant's efforts to keep track of her whereabouts. Moreover, the court gave defendant the opportunity to request a continuance to prepare a response to any allegations presented at trial that went beyond the four corners of the complaint. Defendant declined that opportunity and chose to proceed. Cf. J.D., 207 N.J. at 469, 480 (finding trial court violated defendant's due-process rights by not adjourning the trial when he said he "really wasn't prepared" to address plaintiff's testimony adding to the prior history of domestic violence alleged in the complaint); H.E.S. v. J.C.S., 175 N.J. 309, 324 (2003) (finding trial court violated defendant's due-process rights when it denied his adjournment request after plaintiff had testified about a domestic-violence

incident not alleged in the complaint and granted an FRO based on that newly-asserted incident).

In its decision, the court did not reference plaintiff's testimony about defendant threatening her life in front of her friend. Plaintiff did not present the friend who allegedly heard defendant make that threat as a surprise witness. And, again, defendant declined the court's offer to allow him to seek a continuance so that he could prepare a response to any evidence he believed was beyond the allegations made in the complaint.

Defendant faults the court for considering information regarding the dismissed TRO despite the fact that defendant, not plaintiff, had informed the court about its existence, repeatedly referenced it, and expressly asked the court to consider it. Moreover, although the court referenced in its decision an allegation in the dismissed case regarding defendant's statement he "would harm himself," the court also considered other credible evidence that sufficiently supported the court's finding under prong two of Silver, including plaintiff's credible testimony about her fear defendant would harm her, her concern about him not taking his medication to treat his bipolar condition, and his multiple threats he would kill her if she left him.

A-3981-24

On that record and considering the applicable deferential standard of review, we affirm the July 8, 2025 FRO.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

14                                                                    A-3981-24